PoundTeam Incorporated, a Florida corporation
306 Fox Loop
Davenport, FL 33837
(352) 266-0000
floridamiddledistrictcourt@poundteam.com
Pro se

FILED

2021 FEB -8  AM 8: 30

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**ABANTE ROOTER AND PLUMBING, INC**
a California corporation

*Petitioner,*

vs.

**POUNDTEAM INCORPORATED**,
a Florida corporation

*Respondent.*

Case Number: 8:20-mc-110-T-30SPF

**RESPONSE TO ORDER TO COMPEL COMPLIANCE WITH SUBPOENA**

### FACTUAL BACKGROUND

1) In September of 2020, a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action was served on PoundTeam Incorporated. It was filed as part of a civil action being pursued in the United States District Court for the Northern District of California.
The company policy of PoundTeam Incorporated was, at the time, to ignore subpoenas where the issuing court was not "the court for the district where inspection or production [was] to be made." as per Federal Rule 45 previous to it's amendment on December 1, 2013. We are not attorneys and we were not aware of the amendment to Federal Rule 45.

2) On October 6, 2020 at 6:11pm, Mr. William Conley of PoundTeam Incorporated received an email from Taylor Smith of Woodrow & Peluso LLC with the subpoena from the civil case filed in the United States District Court for the Northern District of California attached. The stated purpose of this email was:
 "...to remind PoundTeam of its obligation to provide a response to the subpoena." And stated, "Accordingly, please contact our law firm immediately regarding PoundTeam's response to the

subpoena. Failure to respond within 14 days will result in our firm moving to enforce the subpoena pursuant to Fed. R Civ. P. 45(g)."

Stepping beyond company policy at the time Mr. Conley replied to Mr. Smith on October 6, 2020 at 9:08pm with a link to the legal notices page of PoundTeam Incorporated which includes, under the heading "Subpoena Policy", our company's policy on compliance with subpoenas and the pricing structure for research and hard copies on two levels: standard and emergency.

In direct response to Mr. Smith's Addendum to Subpoena to Produce Documents to PoundTeam (12) which requires, "A physical inspection of the TRIUMPH DIALING SYSTEM utilized by TRIUMPH, together with all user guides or manuals in effect during the RELEVANT TIME PERIOD." and (13) which requires "A physical inspection of the server on which the TRIUMPH DIALING SYSTEM operates and is hosted", Mr. Conley wrote:

"FYI: We have NO equipment on premises or otherwise under our control, access, or management belonging to or leased/rented by any of the people or businesses mentioned."

3) On October 7, 2020 at 6:35pm Mr. Smith replied to the information given by Mr. Conley with an email asking, "Are you available to jump on a phone call sometime next week?"

Mr. Conley responded on October 7, 2020 at 6:48pm with:

"Pricing is the same for any form of service. Support, consultation, phone calls, et cetera. If you have an idea of the expected length of the phone call and deposit funds to cover that time, we could certainly schedule a call."

This insistence on payment before scheduling a phone call is in part to discourage attorneys from conducting legal matters over the phone as opposed to in email; phone calls covering legal matters require that we record the call and then keep track of the recording in a secure and accessible location, whereas current email (not archived) is already stored securely and is easily accessible in a usable format. It is also to discourage individuals from becoming overly wordy and usurping an excessive amount of any employee's time. Any questions Mr. Smith may have had could likely have been dispatched quickly if handled through email. PoundTeam Incorporated would have still had to insist on payment for the research to provide the "documents" required in sections 2-11 of Mr. Smith's "Addendum to Subpoena to Produce Documents to PoundTeam" because it would have required a significant investment of time and most certainly would have caused us to have to preempt projects and scheduled appointments already paid for by other clients.

4) After this last email on October 7, 2020 PoundTeam Incorporated did not receive any further communication from Mr. Smith or any other attorney for Abante Rooter and Plumbing, Inc. until December 29, 2020 at 12:23pm. In this email Mr. Smith stated: "Attached please find the motion to compel compliance with the PoundTeam subpoena that was filed today in the Middle District of Florida, along with the corresponding exhibits. A copy of the attached documents has been mailed to PoundTeam's principal office address."

## IN RESPONSE TO ORDER TO COMPEL COMPLIANCE WITH SUBPOENA

*Item 1) This can be answered in at least a basic sense.*
*Items 2-11) These items will take time and money to provide detailed information. However, we will supply what we know presently.*
*Items 12-13) These items have already been addressed and the answer given to Mr. Smith but we will reiterate for the sake of this document.*

From Addendum to Subpoena to Produce Documents to PoundTeam

**1) Relationship Between PoundTeam Incorporated and TMS:**

TMS was a client with a dialer for whom we provided basic maintenance and services as paid for in advance (as is company policy). PoundTeam Incorporated has no contracts or agreements nor has PoundTeam Incorporated ever had contracts or agreements with TMS. PoundTeam Incorporated last invoiced TMS in the last quarter of 2019 (as I recall), and the TMS server (being the property of the client) was shipped back to TMS.

2) **User manuals** for the server which was host by PoundTeam Incorporated for TMS do not exist (other than the publicly available "Vicidial Manual" which is not a PoundTeam Incorporated document); there never were any. Any **periodic dialer reports** would have resided *only* on the hardware of the dialer itself which was shipped back to TMS in the last quarter of 2019 (I seem to recall it was October).

3) PoundTeam Incorporated does not have nor would it have ever had (outside of the TMS server) **documentation on the phone numbers clients utilize** to make phone calls anywhere. Any such documentation to which PoundTeam Incorporated had access would have resided *only* on the dialer itself.

4) **"Documents sufficient to identify all calls...from the telephone number..."** PoundTeam Incorporated does not nor would it have ever had access to such documentation outside of the TMS server. Any logs/files with this information would have resided on the TMS dialer.

5) **"All documents sufficient to identify all calls placed by..."** PoundTeam Incorporated does not nor would it have ever had access to such documentation outside of the TMS server. Any logs/files with this information would have resided on the TMS dialer.

6) **"All documents sufficient to identify the total number of calls..."** PoundTeam Incorporated does not nor would it have ever had access to such documentation outside of the TMS server. Any logs/files with this information would have resided on the TMS dialer.

7) **"All documents sufficient to identify any Do Not Call List..."** PoundTeam Incorporated does not nor would it have ever had access to such documentation outside of the TMS server. Any logs/files with this information would have resided on the TMS dialer. The only possibility that remains here is _if_ we installed a Do Not Call List for TMS at some point and we **might** have archived information somewhere with the file attached. Looking for this information would be time consuming and complex.

8) **"All documents sufficient to identify any and all persons… called..."** PoundTeam Incorporated does not nor would it have ever had access to such documentation outside of the TMS server. Any logs/files with this information would have resided on the TMS dialer.

9) **"All documents sufficient to identify your complete relationship...and communications..."** Once again, looking for this information would be time consuming and complex; any of these communications, if they exist, will be in archives now.

10) **"All documents in your possession that mention Plantiff"** PoundTeam Incorporated does not nor would it have ever had access to such documentation outside of the TMS server. Any logs/files with this information would have resided on the TMS dialer.

11) **"All documents sufficient to identify any and all communication between you and..."** Once again, looking for this information would be time consuming and complex; any of these documents, if they exist, will be in archives now.

12) **"A physical inspection of the…"** PoundTeam Incorporated has no equipment on premises or otherwise under our control, access, or management belonging to or leased/rented by any of the people or businesses mentioned.

13) **"A physical inspection of the server…"** PoundTeam Incorporated has no equipment on premises or otherwise under our control, access, or management belonging to or leased/rented by any of the people or businesses mentioned.

As it please the court:

PoundTeam Incorporated's "niche" is providing products and services for clients at a cost much lower than others in our field. Mr. Conley's responses to Mr. Smith were short out of necessity; all of us here at PoundTeam Incorporated work long, hard hours and we are always working on client projects (even Mr. Conley). PoundTeam Incorporated is not a tech giant, and even Google requires payment for discovery.

Pursuant to Federal Rule 45. Subpoena(e):

"(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery."

PoundTeam Incorporated would like to request that we be granted payment for discovery of the demanded documents and more time to deliver them. Any documentation of the sort demanded will have to be searched out on an archive server. Please understand, these are secure files; they include confidential customer information and other information proprietary to PoundTeam Incorporated, and can not be viewed by anyone outside of our company. This search will have to be done by one of our own technicians. They will have to search for each company name (TMS changed their company name at least once that I recall), then any contact names associated with TMS, then each email address associated with either TMS or the contacts unearthed. Discovery of this information will take time and the knowledge of someone who is at present already working more than eight hours a day to finish projects for paying customers. TMS was an older client that preceded PoundTeam Incorporated insisting that clients use our ticketing system, and TMS preferred doing business through email.

I have to the best of my ability provided herein a true and accurate account of the information requested and relayed. As an employee and representative of PoundTeam Incorporated I ask the court to accept this document "as is" though it not be submitted by an attorney in legalese.

*[signature]*

Kamela Hatch
Solution Engineer
PoundTeam Incorporated
floridamiddledistrictcourt@poundteam.com